**UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| Chad Husselbee, and the Glasshouse Nursery LLC,  )<br>)<br>Plaintiffs,                                           )<br>)<br>v.                                                              )<br>)<br>Clemson University; Clemson Coastal         )<br>Research and Education Center;                 )<br>Clemson Office of Land and Capital Asset  )<br>Stewardship; and Laura H. Stoner,             )<br>)<br>Defendants.                                       )<br>_____)  | Case No. 2:25-cv-04460-RMG-MGB<br><br><br><br><br>**REPORT AND RECOMMENDATION** |

Chad Husselbee ("Mr. Husselbee") and the Glasshouse Nursery LLC ("Plaintiffs"), proceeding *pro se* and *in forma pauperis*, bring this civil action challenging Defendant Clemson University's ("Clemson") failure to honor a purported agreement to relocate certain historic greenhouses to Plaintiff's property in December 2022. (Dkt. No. 1.) In bringing this lawsuit, Plaintiffs have also filed a Motion for Temporary Restraining Order to "prevent further alteration, demolition, development, or modification" with respect to said greenhouses. (Dkt. No. 4.) Under 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) (D.S.C.), the undersigned is authorized to review all pretrial matters in this case and submit findings and recommendations to the assigned United States District Judge. As discussed in greater detail below, the undersigned recommends that this action be summarily dismissed and Plaintiffs' Motion for Temporary Restraining Order be denied for lack of federal subject matter jurisdiction.

**BACKGROUND**

According to the Complaint, Mr. Husselbee "has been in the landscaping industry for over seventeen (17) years and owns a nursery business called The Glasshouse Nursery." (Dkt.

1

No. 1-11 at 2.) Upon learning that Clemson University planned to demolish certain historic greenhouses on the school's property, Mr. Husselbee contacted Defendant Laura H. Stoner, Clemson's Director of the Office of Land and Capital Asset Stewardship, regarding the possibility of relocating the structures to his property "at his own expense."[1] (Dkt. No. 1 at 7; Dkt. No. 1-11 at 2.) Defendant Stoner explained to Mr. Husselbee the various requirements and regulations he would need to satisfy in order for Clemson to approve his proposal to relocate the greenhouses. (Dkt. No. 1 at 7; Dkt. No. 1-11 at 2.) Over the course of the next several years, Mr. Husselbee continued to communicate with Defendant Stoner about relocating the greenhouses, relying on her "for advice and direction" to "ensure that [he] followed Clemson's requirements and guidelines in preparing [his] bid." (Dkt. No. 1-11 at 2.)

Mr. Husselbee claims that by the time he submitted his proposal, he had "followed all procedures outlined by Clemson, including meetings with their recommended contractor (DECO) and preparing the necessary equipment, land, labor, and financing to move the greenhouses" by the prescribed deadline of Christmas 2022. (Dkt. No. 1 at 7.) Nevertheless, shortly after Mr. Husselbee submitted his proposal, Clemson decided to keep the greenhouses, "causing extensive financial, reputational, and logistical harm to Plaintiffs," who had "invested substantial resources" into the project based on Clemson's purported assurances "that they could relocate the greenhouse structures to their property in Ruffin, [South Carolina] upon meeting [the] specified requirements."[2] (*Id.* at 7, 10–11.)

It is against this background that Plaintiffs now bring the instant civil action against Clemson University, Laura H. Stoner, Clemson's Coastal Research and Education Center, and

---

[1] The greenhouses were initially owned by the United States and operated by the Department of Agriculture, but were later acquired by Clemson University. (Dkt. No. 1-10; Dkt. No. 1-11 at 1–2.)

[2] To be clear, there is no indication that Clemson ever formally accepted or approved Mr. Husselbee's proposal to relocate the greenhouses. (Dkt. No. 1-11 at 2–3; *see also* Dkt. No. 15-1 at 3–4.) However, even if Clemson had accepted Mr. Husselbee's proposal, the outcome of this Report and Recommendation would remain the same.

2

Clemson's Office of Land and Capital Asset Stewardship (collectively, "Defendants"). The Complaint alleges state law claims for breach of implied contract, promissory estoppel, unjust enrichment, negligent misrepresentation, and tortious interference, as well as violations of the following federal statutes: False Claims Act, 31 U.S.C. § 3729 et seq.; Destruction of Government Property, 18 U.S.C. § 1361; Natural Historic Preservation Act, 54 U.S.C. § 300101 et seq.; Federal Property and Administrative Services Act of 1949, 40 U.S.C. § 101 et seq.; Internal Revenue Code, § 26 U.S.C. § 47; Freedom of Information Act, 5 U.S.C. § 552 et seq., Federal Records Act, 44 U.S.C. § 2101 et seq.; Administrative Procedure Act, 5 U.S.C. § 701 et seq.; and Civil Rights Act of 1964, 42 U.S.C. § 1983. (Dkt. No. 1 at 5; Dkt. No. 1-2.) Plaintiffs seek over $58 million in damages and a temporary injunction directing Clemson University to "cease any further alteration, development, or use of the greenhouse structures . . . until this matter is resolved." (Dkt. No. 1 at 8; *see also* Dkt. No. 4.)

## **STANDARD OF REVIEW**

The Complaint has been filed pursuant to 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without prepaying the administrative costs of proceeding with the lawsuit. To protect against possible abuses, the court must dismiss any complaints, or portions of complaints, that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous if it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). Accordingly, a claim based on a "meritless legal theory" or "baseless" factual contentions may be dismissed *sua sponte* at any time under § 1915(e)(2)(B). *Neitzke v. Williams*, 490 U.S. 319, 324–25, 327–28 (1989). The United States Supreme Court has

explained that the statute "is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits." *Id.* at 326.

As to failure to state a claim, a complaint filed in federal court must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" under Rule 8(a)(2) of the Federal Rules of Civil Procedure. In order to satisfy this standard, a plaintiff must do more than make conclusory statements. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the court need not accept as true a complaint's legal conclusions). Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. When "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), the complaint fails to state a claim.

*Pro se* complaints are held to a less stringent standard than those drafted by attorneys. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). A federal court is therefore charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, the requirement of liberal construction does not mean that the court can ignore a clear failure to allege facts that set forth a cognizable claim under Rule 8(a)(2). *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990); *see also Iqbal*, 556 U.S. at 684 (outlining pleading requirements under Rule 8, Fed. R. Civ. P., for "all civil actions"). The Fourth Circuit has explained that "though *pro se* litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district

courts be required to conjure up and decide issues never fairly presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1276 (4th Cir. 1985).

## DISCUSSION

As a threshold matter, the undersigned notes that "[i]t has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel." *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201–02 (1993); *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985) ("The rule is well established that a corporation is an artificial entity that can only act through agents, cannot appear *pro se*, and must be represented by counsel."). "[T]he rationale for that rule applies equally to all artificial entities," and "lower courts have uniformly held that 28 U.S.C. § 1654, providing that 'parties may plead and conduct their own cases personally or by counsel,' does not allow corporations, partnerships, or associations to appear in federal court otherwise than through a licensed attorney." *Rowland*, 506 U.S. at 202. To that end, the Glasshouse Nursery LLC may not appear *pro se* in this case, and Mr. Husselbee may not represent the company as a non-attorney. *See Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) (explaining that the legal competence of a layman is "clearly too limited to allow him to risk the rights of others").

Notwithstanding the above, it would be futile to allow the Glasshouse Nursery LLC an opportunity to retain counsel, as this Court cannot exercise subject matter jurisdiction over Plaintiffs' claims in the first instance. Federal courts are courts of limited jurisdiction, meaning they possess only that power authorized by Article III of the United States Constitution and affirmatively granted by federal statute. *Willy v. Coastal Corp.*, 503 U.S. 131, 136–37 (1992). Accordingly, a federal court is required, *sua sponte*, to determine if a valid basis for its jurisdiction exists "and to dismiss the action if no such ground appears." *In re Bulldog Trucking,*

*Inc.*, 147 F.3d 347, 352 (4th Cir. 1998). There is no presumption that a federal court has jurisdiction over a case, *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999), and a plaintiff must allege facts essential to show jurisdiction in his or her pleadings. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936).

There are two primary bases for exercising original federal jurisdiction: (1) "federal question" under 28 U.S.C. § 1331, and (2) "diversity of citizenship" under 28 U.S.C. § 1332. In order to invoke federal question jurisdiction, the plaintiff must assert a cause of action "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. To invoke diversity jurisdiction, there must be complete diversity of parties and an amount in controversy in excess of $75,000. *Id.* § 1332(a). If a federal district court has original jurisdiction over a civil action, it may also exercise supplemental jurisdiction over any state law claims that are "so related" to the claims under the court's original jurisdiction "that they form part of the same case or controversy." *Id.* § 1367(a). Without original jurisdiction, however, a federal court generally cannot exercise supplemental jurisdiction over state law claims. *See id.* § 1367(c)(3) (stating that the district court may decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it has original jurisdiction). Here, Plaintiffs contend that "[t]his case arises under 28 U.S.C. § 1331 because it involves violations of federal statutes and constitutional provisions," and the Court may therefore exercise supplemental jurisdiction over the remaining state law claims. (Dkt. No. 1 at 5, 10; Dkt. No. 1-2.) The undersigned disagrees.

In order to establish federal question jurisdiction under § 1331, "the complaint must . . . contain allegations affirmatively and distinctly establishing federal grounds not in mere form, but in substance and not in mere assertion, but in essence and effect." *Burgess v. Charlottesville Savings and Loan Assoc.*, 477 F.2d 40, 43 (4th Cir. 1973) (internal quotation

6

marks and citations omitted). Thus, federal jurisdiction requires "more than a simple allegation that jurisdiction exists or citation to a federal statute, and a mere allegation that a federal statute has been violated is not sufficient to invoke federal jurisdiction." *Brantley v. Nationstar Mortg. LLC*, No. 9:19-cv-490-BHH-BM, 2019 WL 8918793, at *3 (D.S.C. Oct. 8, 2019), *adopted*, 2020 WL 1181309 (D.S.C. Mar. 11, 2020) (internal citations omitted). In the instant case, Plaintiffs reference—without application to the facts—a laundry list of federal statutes that allegedly "involve federal protections of historically significant property, the improper use and destruction of federal resources, and . . . false representations or failures of stewardship by state institutions utilizing federally acquired property." (Dkt. No. 1 at 5.) While these statutes may be, at most, tangentially related to the use of Clemson's historic greenhouses, they do not provide viable causes of action or apply to Defendants' conduct as alleged in the Complaint. *See Rivers v. Goodstein*, No. 2:18-cv-2032-RMG-MGB, 2018 WL 4658487, at *6 (D.S.C. Sept. 7, 2018) (noting that "[t]he mere recitation of inapplicable statutes in connection with patently frivolous claims" does not raise a colorable federal question), *adopted*, 2018 WL 4656239 (D.S.C. Sept. 27, 2018). Rather, the true crux of this action is Clemson's alleged failure to honor the purported agreement to approve Mr. Husselbee's proposal and relocate the greenhouses to his property—in short, state contract law.[3] Accordingly, as set forth below, each of the listed federal statutes fails to provide a valid basis for exercising federal question jurisdiction in this case.

I.    **False Claims Act, 31 U.S.C. § 3729 et seq.**

The False Claims Act ("FCA") is "intended to reach all types of fraud, without qualification, that might result in financial loss to the Government." *See United States v. Neifert–*

---

[3]    Even considering these facts in the light most favorable to Plaintiffs, the undersigned seriously questions whether there was an enforceable agreement or contract between the parties in the first instance. The Court need not decide that issue here, however, as it is more appropriately reserved for the state courts' consideration as discussed below.

*White Co.,* 390 U.S. 228, 232–33 (1968); *see also Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 788 (4th Cir. 1999) (explaining that the FCA reaches "all fraudulent attempts to cause the Government to pay out sums of money") (internal citations omitted); *Rahmani v. Fargo*, No. 1:24-cv-1727-RDA-IDD, 2024 WL 4571413, at *2 (E.D. Va. Oct. 24, 2024), *appeal dismissed sub nom. Rahmani v. Wells Fargo Bank*, No. 24-2092, 2025 WL 957482 (4th Cir. Mar. 31, 2025) ("The False Claims Act is intended to discourage fraud against the *government*.") (emphasis in original). Although an individual may bring a claim for violation of the FCA, that claim is "also brought on behalf of the United States," such that "a plaintiff who is proceeding *pro se*, may not assert such a claim and must be represented by counsel." *Haskins v. Commonwealth of Virginia Dep't of Soc. Servs.*, No. 3:22-cv-456-DJN, 2022 WL 17574073, at *4 (E.D. Va. Dec. 9, 2022), *aff'd sub nom. Haskins v. Dep't of Soc. Servs., Div. of Child Support Enf't*, No. 23-1024, 2023 WL 3597580 (4th Cir. May 23, 2023) (internal citations omitted); *see also U.S. ex rel. Brooks v. Lockheed Martin Corp.*, 237 F. App'x 802, 803 (4th Cir. 2007) (finding that the FCA does not provide a private right of action for *pro se* litigants). Thus, while the FCA is plainly inapplicable to the facts here—as there is no purported fraud against the United States—Plaintiffs cannot bring this claim *pro se* in any event.

**II.     Destruction of Government Property, 18 U.S.C. § 1361**

Plaintiffs next cite 18 U.S.C. §1361, which criminalizes the willful injury or depredation of any property owned by the United States, its agencies, or any property being manufactured or constructed for them. 18 U.S.C. § 1361. Notwithstanding the fact that the greenhouses at issue now belong to Clemson University, rather than the United States (Dkt. No. 1-10; Dkt. No. 1-11 at 1–2), Plaintiffs cannot bring a claim under § 1361 because the statute is part of the criminal code and cannot be used as a vehicle for civil prosecution here. *See Linda R.S. v. Richard D.*, 410

U.S. 614, 619 (1973) (finding that a private citizen does not have a judicially cognizable interest in the prosecution or non-prosecution of another person); *Haskins*, 2022 WL 17574073, at *4 ("A private person may not initiate a criminal action in the federal courts.") (internal citations omitted); *Diamond v. Charles*, 476 U.S. 54, 64–65 (1986) (collecting cases); *see also Sledge v. U.S. Dep't of Just.*, No. 1:11-cv-3465-JFA-SVH, 2012 WL 4097746, at *4 (D.S.C. Aug. 27, 2012), *adopted*, 2012 WL 4094735 (D.S.C. Sept. 18, 2012) (dismissing claim under 18 U.S.C. § 1361 because "criminal statutes do not provide independent substantive rights"). Any such claim is therefore subject to summary dismissal.

### III.    Natural Historic Preservation Act, 54 U.S.C. § 300101 et seq.

Congress enacted the National Historic Preservation Act ("NHPA") to "foster conditions under which our modern society and our historic property can exist in productive harmony and fulfill the social, economic, and other requirements of present and future generations." 54 U.S.C. § 300101(1). Notably, the NHPA primarily targets federal agency action. For example, the Complaint references § 306101 (Dkt. No. 1 at 5), which provides that "[t]he head of each Federal agency shall assume responsibility for the preservation of historic property that is owned or controlled by the agency," and "shall undertake . . . any preservation as may be necessary." *Id.* § 306101(a)(1), (3). Other provisions cited in the Complaint involve grants from the federal agencies to states and local governments, *id.* § 302902, intended to carry out "preservation efforts through heritage tourism, education, and historic preservation planning activities," *id.* § 311102(a), and "projects to preserve nationally significant collections and historic property," *id.* § 308902(b), among other things.

Although the Fourth Circuit has not explicitly ruled on the issue of whether the NHPA provides for a private right of action, district courts within this Circuit have found that it does

not. *See Davis v. Northam*, No. 3:20-cv-403-HEH, 2020 WL 4274571, at *3 (E.D. Va. July 24, 2020) (finding no "private remedy" under the NHPA); *Historic Green Springs, Inc. v. U.S. E.P.A.*, 742 F. Supp. 2d 837, 853 (W.D. Va. 2010) ("[T]he NHPA does not contain a private cause of action."); *see also Crawford v. Neighbors Bldg. Neighborhoods, Inc.*, No. 6:24-cv-226-RAW-DES, 2024 WL 5402340, at *3 (E.D. Okla. Nov. 8, 2024) (collecting cases). Moreover, those courts that do recognize a private right of action have concluded that the claim "does not extend to actions against nonagency defendants" like Clemson University. *See Vieux Carre Prop. Owners, Residents & Assocs., Inc. v. Brown*, 875 F.2d 453, 458 (5th Cir. 1989) (explaining that "only a federal agency can violate" the NHPA provisions). Consequently, Plaintiffs' NHPA claim is subject to summary dismissal.

IV.   **Federal Property and Administrative Services Act of 1949, 40 U.S.C. § 101 et seq.**

The Federal Property and Administrative Services Act ("FPASA") governs the "sale and disposal of surplus government property." *Leitman v. McAusland*, No. 2:90-cv-1268-RBK, 1990 WL 303043, at *2 (E.D. Va. June 27, 1990), *aff'd*, 934 F.2d 46 (4th Cir. 1991); *see also United States v. D.C.*, 596 F. Supp. 725, 735 (D. Md. 1984), *aff'd*, 788 F.2d 239 (4th Cir. 1986) (noting that the FPASA "authorizes [the General Services Administration] to dispose of surplus federal property"). Specifically, 40 U.S.C. § 550 allows for the transfer of property owned by the United States for educational use; the protection of public health; use as a public park or recreation area; low income housing assistance; national service activities; and use as a historic monument. 40 U.S.C. § 550(c)–(h). Once again, while Clemson University's greenhouses are no longer owned by the federal government, the FPASA does not provide a private right of action anyhow, and any such claim is therefore subject to summary dismissal. *See Cooper v. Haase*, 750 F. App'x. 600, 601 (9th Cir. 2019) (noting that the FPASA "does not provide for a private cause of

action"); *Conservation Law Found. of New England, Inc. v. Harper*, 587 F.Supp. 357, 366–67 (D. Mass. 1984) (same).

## V. Internal Revenue Code, 26 U.S.C. § 47

Section 47 of the Internal Revenue Code reflects a federal tax incentive program designed to encourage the rehabilitation and preservation of historic buildings. More specifically, the statute provides a "rehabilitation credit" equal to "20 percent of the qualified rehabilitation expenditures" for any certified historic structure. 26 U.S.C. § 47(a)(2). The undersigned can only assume that the Complaint references this statute (Dkt. No. 1 at 5) because Plaintiffs believe they are—or would have been—eligible to receive this tax benefit in relation to their proposed rehabilitation of Clemson's greenhouses. Regardless of whether that is true, however, there is no case law to indicate that the rehabilitation tax provides Plaintiffs with a cognizable private right of action against Defendants based on Clemson's decision to keep the greenhouses. Consequently, Plaintiffs' claim under the Internal Revenue Code is subject to summary dismissal.

## VI. Freedom of Information Act, 5 U.S.C. § 552 et seq.

The Freedom of Information Act ("FOIA") governs what information should be made available to the public by an agency of the Government of the United States. *See* 5 U.S.C. § 552(a). It is well-established that FOIA "is applicable to agencies or departments of the United States Government, not state agencies or departments." *See Miller v. S.C. Dep't of Prob., Parole, & Pardon Servs.*, No. 2:08-cv-3836-JFA-RSA, 2008 WL 5427754, at *1 (D.S.C. Dec. 31, 2008), *aff'd*, 327 F. App'x 407 (4th Cir. 2009) (referencing 5 U.S.C. § 551(1)). Thus, to the extent Clemson University or any of the other Defendants failed to comply with Plaintiffs' apparent requests for information pursuant to FOIA (Dkt. No. 1-2 at 2), they do not qualify as federal

agencies under the statute and any such claims against them must be dismissed. *See Bonds v. Clarke*, No. 7:23-cv-583, 2025 WL 320953, at *1 (W.D. Va. Jan. 28, 2025) (dismissing FOIA claim because "it applies only to federal agencies and not to state agencies or state employees").

## VII.    Federal Records Act, 44 U.S.C. § 3101 et seq.

The Federal Records Act ("FRA") "authorizes the head of each Federal agency to establish a records management program and to define the extent to which documents are appropriate for preservation as agency records. The records management program requires that adequate documentation of agency policies and procedures be retained." *See Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 147 (1980) (internal quotation marks omitted). Notably, the FRA

> establishes only one remedy for the improper removal of a record from the agency. The head of the agency is required under 44 U.S.C. § 3106 to notify the Attorney General if he determines or has reason to believe that records have been improperly removed from the agency. The Administrator of General Services is obligated to assist in such actions. . . . At the behest of these administrators, the Attorney General may bring suit to recover the records.

*Id.* at 148 (internal quotation marks omitted). Insofar as Plaintiffs allege that Defendants somehow violated the FRA (Dkt. No. 1-2 at 2), these statutory protections plainly apply to federal agency action only and do not provide Plaintiffs with a private cause of action in this case. *See Winey v. Mattis*, No. 1:17-cv-325-LMB-JFA, 2017 WL 6403114, at *3 (E.D. Va. Aug. 4, 2017), *aff'd*, 712 F. App'x 284 (4th Cir. 2018) ("[T]he Federal Records Act does not contain a private right of action, therefore it cannot support a claim for relief.").

## VIII.    Administrative Procedure Act, 5 U.S.C. § 701 et seq.

The Administrative Procedure Act ("APA") provides that "[a] person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. "Agency"

12

is defined as "each authority of the Government of the United States." *Id.* § 701(b)(1); *see also id.* § 551(1). Thus, redress under the APA "is available only for actions taken by *federal agencies*." *See Robinson v. Dotson*, No. 1:24-cv-1059-MSN-IDD, 2024 WL 3884195, at *2 (E.D. Va. Aug. 19, 2024) (referencing 5 U.S.C. § 701(b)(1)) (emphasis in original); *see also Ruhadze v. Audi of Am., LLC*, No. 1:24-cv-3029-BAH, 2025 WL 1474825, at *3 (D. Md. May 22, 2025) ("The APA does not provide a private right of action against private parties who are not federal agencies.").

In support of their claim, Plaintiffs simply state that the APA applies where "public institutions carrying out federally delegated duties act arbitrarily. . . ." (Dkt. No. 1-2 at 2.) Defendants do not, however, qualify as federal agencies for purposes of the APA, even if the United States previously owned the greenhouses and sold them to Clemson University under certain conditions and/or supervision. Indeed, "[f]ederal oversight," "conditions attached to federal funds," "[t]emporary control," and "[m]ere influence" do not convert a state entity into a "federal instrumentality" for purposes of the APA. *Kerpen v. Metro. Washington Airports Auth.*, 907 F.3d 152, 158–60 (4th Cir. 2018); *see also Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 397 (1995). Accordingly, while many of the federal statutes cited in the Complaint allow for judicial review under the lens of the APA, Plaintiffs cannot invoke that redress here, as the challenged actions are, at bottom, attributable to a state university, rather than a federal agency. *See Anderson v. State Univ. of New York*, No. 1:24-cv-2083-LTS, 2024 WL 3656551, at *3 (S.D.N.Y. July 29, 2024) (dismissing APA claim against public university because such allegations "[did] not implicate a final agency action").

**IX.     Civil Rights Act of 1964, 42 U.S.C. § 1983**

A civil action under 42 U.S.C. § 1983 "creates a private right of action to vindicate violations of rights, privileges, or immunities secured by the Constitution and laws of the United States." *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012). To state a claim to relief under § 1983, the plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, Plaintiffs allege that "Clemson University, as a public institution, may be liable for violations of due process or property interests." (Dkt. No. 1-2 at 2.)

At the outset, Clemson University, the Coastal Research and Education Center, and the Office of Land and Capital Asset Stewardship are not "persons" for purposes of § 1983, regardless of whether Plaintiffs refer to the physical buildings or the staff and collection of officials they house. *See Bowers v. Rector & Visitors of Univ. of VA*, No. 3:06-cv-41, 2007 WL 853815, at *4 (W.D. Va. Mar. 16, 2007) ("A mountain of case law supports the proposition that [a] University is not a person under § 1983."); *see also Barnes v. Bakersville Corr. Ctr. Med. Staff*, No. 3:07-cv-195, 2008 WL 2564779, at *1 (E.D. Va. June 25, 2008) (holding that use of the term "staff" or the equivalent as a name for alleged defendants, without the naming of specific staff members, is not adequate to state a claim against a "person" as required under § 1983); *Dean v. S.C. Dep't of Mental Health*, No. 6:16-cv-3422-TMC-KFM, 2017 WL 2332741, at *1 (D.S.C. May 30, 2017) (explaining that "entire departments" or "groups of people" are not amenable to suit under § 1983).

Moreover, Defendants are immune from suit for monetary damages brought against them in their official capacity under § 1983, as the Eleventh Amendment bars damages actions against

14

a State and its agencies for alleged deprivations of civil liberties. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66, (1989). "Eleventh Amendment immunity also extends to 'arms of the State' and state employees acting in their official capacity." *Doe v. Coastal Carolina Univ.*, 359 F. Supp. 3d 367, 378 (D.S.C. 2019); *see also Will*, 491 U.S. at 70–71 (explaining that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," and "[a]s such, it is no different from a suit against the State itself"). Because this Court has previously determined that Clemson University is an alter ego of the State of South Carolina, Plaintiffs' claims for monetary damages against Defendants in their official capacity are subject to summary dismissal. *See, e.g.*, *Troutman v. Hendrix*, No. 3:08-cv-449-MJP, 2010 WL 11640110, at *6 (D.S.C. July 22, 2010); *Martin v. Clemson Univ.*, 654 F. Supp. 2d 410, 415 (D.S.C. 2009).

Based on the above, Plaintiffs' only potential claim for a due process violation lies against Defendant Stoner in her individual capacity. To establish a violation of procedural due process, a plaintiff must demonstrate that "(1) they had property or a property interest (2) of which [the state] deprived them (3) without due process of law." *Sylvia Dev. Corp. v. Calvert Cnty., Md.*, 48 F.3d 810, 826 (4th Cir. 1995). To establish a violation of substantive due process, a plaintiff must demonstrate "(1) that they had property or a property interest; (2) that the state deprived them of this property or property interest; and (3) that the state's action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency." *Id.* at 827.

Regardless of whether Plaintiffs are alleging a violation of procedural or substantive due process, their claim fails under the very first element of both tests. As discussed above, this action ultimately boils down to Defendants' purported commitment to accept Mr. Husselbee's

proposal to relocate Clemson's greenhouses upon the satisfaction of certain requirements, and their subsequent decision to keep the greenhouses after Mr. Husselbee apparently complied with those requirements. (Dkt. No. 1 at 7–8.) However, it is well-settled that "[n]o property interest is implicated by an unsuccessful bidder's failed attempt to obtain a contract." *See Pro. Police Servs., Inc. v. Hous. Auth. of the City of Charlotte, N.C.*, No. 3:15-cv-422-RJC-DSC, 2016 WL 828630, at *2 (W.D.N.C. Feb. 2, 2016), *adopted sub nom. Pro. Police Servs., Inc. v. Hous. Auth. of City of Charlotte*, 2016 WL 830867 (W.D.N.C. Mar. 3, 2016) (collecting cases); *see also Russo v. Sch. Bd. of City of Hampton, Va.*, 835 F. Supp. 2d 125, 132 (E.D. Va. 2011) (explaining that "[a] simple breach of contract claim does not give rise to a Section 1983 claim" for purposes of due process). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Sono Irish, Inc. v. Town of Surfside Beach*, No. 4:13-cv-249-RBH, 2015 WL 2412156, at *8 (D.S.C. May 21, 2015) (citing *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). A benefit "is not a protected entitlement" for due process purposes "if government officials may grant or deny it in their discretion." *See id.* (referencing *Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 756 (2005)); *see also Sylvia Dev. Corp. v. Calvert Cnty., Md.*, 48 F.3d 810, 826 (4th Cir. 1995).

      Plaintiffs seem to suggest that they are entitled to the greenhouses, or to the approval of their bid to relocate the greenhouses, because they met all the criteria set forth by Clemson. (Dkt. No. 1 at 7–8.) However, the criteria were simply "preconditions which must be met" before Plaintiffs' proposal could be "*considered* for [Clemson's] approval." *Sylvia Dev. Corp.*, 48 F.3d at 826 (emphasis in original). In other words, Clemson University ultimately had the discretion to accept or reject Plaintiffs' bid, such that there is no legitimate entitlement to support a due

process claim here. *See Sono Irish, Inc.*, 2015 WL 2412156, at *8–10 (finding no property interest because absent South Carolina law or municipal ordinance conferring property interest on unsuccessful bidders, town had "discretion to deny or reject" plaintiff's bid for commercial lease); *Sylvia Dev. Corp.*, 48 F.3d at 826 (explaining that while plaintiff may have believed its proposal would be approved upon satisfaction of certain criteria, the ultimate decision was an "exercise of judgement," such that there was no "protected entitlement" for due process purposes).

This is especially true where "a state provides a remedy through a breach of contract suit in state court." *Russo*, 835 F. Supp. 2d at 132. Indeed, even if there is "an unauthorized intentional deprivation of property by a state employee," which did not occur here, there is no violation of the Due Process Clause "if a meaningful postdeprivation remedy for the loss is available." *See Burch v. NC Dep't of Pub. Safety*, 158 F. Supp. 3d 449, 459 (E.D.N.C. 2016) (referencing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)); *see also Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 197 (2001) (explaining that as long as the state "makes ordinary judicial process available to respondent for resolving its contractual dispute, that process is due process"). Because Plaintiffs can challenge Defendants' failure to honor their purported agreement in state court, they have failed to demonstrate an actionable due process violation for purposes § 1983, and any such claim must be dismissed.

## X. Remaining State Law Claims

Without a federal cause of action, this Court may not exercise jurisdiction over Plaintiffs' state law claims—breach of implied contract, promissory estoppel, unjust enrichment, negligent misrepresentation, and tortious interference—unless there is complete diversity of parties and an amount in controversy in excess of $75,000 as required under § 1332. Complete diversity of

parties means that no party on one side may be a citizen of the same state as any party on the other side. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 372–74 (1978); *see also Cent. W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011) (noting that diversity jurisdiction "requires complete diversity among parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant"). Because Plaintiffs and Defendants appear to be citizens of South Carolina (*see* Dkt. No. 1 at 2–3; Dkt. No. 7), complete diversity does not exist here. Thus, Plaintiffs cannot invoke diversity jurisdiction under § 1332, and the Court therefore lacks subject matter jurisdiction over their claims.

It is for these same reasons that the undersigned also recommends denying Plaintiff's Motion for Temporary Restraining Order. (Dkt. No. 4.) Immediate injunctive relief is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Collins v. Bernedette*, No. 2:22-cv-1391-RMG, 2022 WL 16951738, at *1 (D.S.C. Nov. 15, 2022) ("A preliminary injunction is an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it.") (internal citations and quotation marks omitted). Rather, a temporary restraining order should issue only when the movant has established all four of the following elements: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of the equities tips in his favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20; *see also Henderson for Nat'l Lab. Rels. Bd. v. Bluefield Hosp. Co., LLC*, 902 F.3d 432, 439 (4th Cir. 2018) (noting that "*Winter* made clear that each of these four factors must be satisfied to obtain preliminary injunctive relief"); *Virginia v. Kelly*, 29 F.3d 145, 147 (4th Cir. 1994) (showing that the standard for a

temporary restraining order is the same as that applied to motions for preliminary injunction). Here, the first element is dispositive, as Plaintiffs are not likely to succeed on the merits of their claims for the reasons discussed above. Without subject matter jurisdiction over Plaintiffs' claims, the Court simply cannot consider their request for immediate injunctive relief and must reserve such questions for the South Carolina state courts.

## CONCLUSION

Based on the above, the undersigned is of the opinion that Plaintiffs cannot cure the deficiencies in the Complaint, and this action is therefore subject to summary dismissal for lack of federal subject matter jurisdiction. *See Domino Sugar Corp. v. Sugar Workers Local Union 392 of United Food and Commercial Workers Int'l Union*, 10 F.3d 1064 (4th Cir. 1993). Accordingly, the undersigned **RECOMMENDS** that this action be **DISMISSED** without further leave to amend, and that Plaintiff's Motion for Temporary Restraining Order (Dkt. No. 4) be **DENIED**. *See Britt v. DeJoy*, 45 F.4th 790, 798 (4th Cir. 2022).

**IT IS SO RECOMMENDED.**

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

June 10, 2025
Charleston, South Carolina

**The parties' attention is directed to an important notice on the following page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).